USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 92-2224 UNITED STATES, Appellee, v. JOSE R. GONZALEZ-NEGRON, Defendant, Appellant. ____________________ No. 93-1201 UNITED STATES, Plaintiff, Appellee, v. JOSE R. GONZALEZ-NEGRON, Defendant, Appellant. ____________ ERRATA SHEET The opinion of this Court issued on August 23, 1993, is amended as follows: On cover sheet change the word "Appeal" to Appeals. August 23, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 92-2224 UNITED STATES, Appellee, v. JOSE R. GONZALEZ-NEGRON, Defendant, Appellant. __________________ No. 93-1201 UNITED STATES, Plaintiff, Appellee, v. JOSE R. GONZALEZ-NEGRON, Defendant, Appellant. ___________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ___________________ Before Cyr, Boudin and Stahl, Circuit Judges. ______________ ___________________ Benicio Sanchez Rivera, Federal Public Defendant, and Miguel ______________________ ______ A.A. Nogueras-Castor, Assistant Federal Public Defender, on brief ____________________ for appellant. Charles E. Fitzwilliam, United States Attorney, Jose A. _______________________ ________ Quiles-Espinosa, Senior Litigation Counsel, and Ernesto _______________ _______ Hernandez-Milan, Assistant United States Attorney, on brief for _______________ appellee. __________________ __________________ Per Curiam. Defendant-appellant Jose R. Gonzalez- ___________ Negron seeks to have his sentence vacated and recalculated in the district court on the grounds that the government breached its plea agreement with him. In particular, defendant contends the government promised to file a 5K1.1 motion for downward departure, but failed to do so. The district court found that the government made no such promise. Appellant further argues that the district court erred in concluding that it had no authority to grant a 5K1.1 departure absent a motion by the government. We affirm. Background __________ Appellant pled guilty to two counts of a four-count indictment charging him with stealing and concealing firearms contained in packages intended to be conveyed or delivered by the Postal Service and which he came to possess as a Postal Service employee, in violation of 18 U.S.C. 1709, 922(j) and 924(a)(2). In return for appellant's guilty plea to counts one and two, the government agreed to request dismissal of counts three and four and, at the time of sentence, to inform the Court of "the extent and nature of defendant's cooperation." The plea agreement further provided as follows: 6. [Defendant enters the agreement] without . . . promises from the [government] other than those explicitly indicated in this document. -3- 7. No additional promises, terms or conditions have been entered into other than those set forth in this plea agreement and none will be entered unless in writing and signed by all parties. The Pre-Sentence Report (PSR) set forth the following facts. On November 8, 1991, a registered parcel containing two revolvers was mailed from Birmingham, Alabama and an unregistered parcel containing two pistols was mailed from Miami, Florida. Both packages were addressed to a gun shop in Bayamon, Puerto Rico. The packages were stolen from the Bayamon branch Post Office on November 13, 1991. One of appellant's co-workers told postal inspectors that appellant was responsible for the thefts. A few weeks after the theft, appellant sold one of the pistols to a Puerto Rico Police Department undercover agent. Appellant sold the other pistol to an acquaintance for $700. A third firearm was discovered by appellant's father in appellant's car. In an interview with a postal inspector, appellant stated that he had received from his co-worker a yellow slip of paper for retrieving the packages. He had given the slip to his neighbor, a minor, who subsequently obtained the packages and delivered the firearms contained therein to appellant. The PSR reiterated the terms of the plea agreement, including that "the government will . . . inform the court at the time of sentencing regarding the extent and nature of whatever cooperation is provided by the defendant." The probation officer recommended a base offense level (BOL) of 12, to be increased by - 4 - 4 1 level because the offense involved more than two, but less than five, firearms. The PSR further recommended an upward adjustment in the BOL of two levels for appellant's role in the offense and a downward adjustment of two levels for his acceptance of responsibility. Based upon the recommended total offense level of 13 and a criminal history category of I, the probation officer arrived at a guideline imprisonment range of 12 to 18 months. In discussing factors that may warrant a departure, the PSR advised as follows: A downward departure may be considered by the Court based on the cooperation which the defendant has afforded government authorities. According to Postal Inspector J.R. Cottes, as a result of information provided by the defendant, accomplice Jacques Orsini-Martinez, a minor, was arrested and successfully prosecuted by state authorities. The PSR also noted that appellant had been arrested by local authorities and charged with unlawful sale and illegal possession of a firearm, arising out of the same facts underlying the federal indictment. Trial was at that time pending in the Puerto Rico Superior Court. At the sentencing hearing on October 7, 1992, the court began by asking appellant if he had anything to say in mitigation of punishment. Appellant (through his counsel) responded by stating that he had been informed that the government would not move for a downward departure pursuant to U.S.S.G. 5K1.1. Appellant objected that he had provided - 5 - 5 substantial assistance to the government, resulting in successful prosecution in the Puerto Rico courts of a minor who was involved in the offense with him. Appellant contended that the government's failure to make a 5K1.1 motion constituted a breach of the plea agreement. The court asked the government to respond and specifically asked, pursuant to the plea agreement, to be informed about the defendant's cooperation. The government stated that at the time the plea agreement was entered, the type of cooperation expected from appellant was the surrender of the two missing firearms or the identification of the persons to whom they'd been delivered. This cooperation was not received. Appellant neither delivered the guns to the government nor identified the persons to whom he had delivered them. Appellant then argued that he had provided cooperation in locating the missing weapons by meeting with a special agent of the federal Bureau of Alcohol, Tobacco and Firearms and telling him to whom he had given the firearms. In addition, he had met with one of the recipients of the missing firearms. That person was murdered on the day after the meeting, defeating appellant's plans to retrieve the firearm. Appellant attempted, also unsuccessfully, to locate the recipient of the other missing weapon. In view of this cooperation, appellant argued that the government's refusal to move for a 5K1.1 departure was arbitrary and capricious. - 6 - 6 The district court ruled that in the absence of a motion by the government, and without any evidence that "the government is lying or is not telling the truth or is hiding evidence," it was without authority to depart from the guidelines pursuant to U.S.S.G. 5K1.1. The court sentenced appellant to twelve months' imprisonment on each count, to be served concurrently. The sentencing judge explained that he was imposing a sentence at the low end of the guideline range "because of [appellant's] youth and the fact that he has cooperated in a way, not too much but in a way with the local government, but it is not enough for a departure under Section 5K of the guidelines." On October 13, 1992, appellant filed a notice of appeal (Appeal No. 92-2224). The next day, appellant filed with the district court a motion to correct or reduce sentence pursuant to Fed. R. Crim. P. 35(c). Appellant requested a hearing on the issue of the government's breach of its obligation under the plea agreement to move for a downward departure from the guidelines pursuant to U.S.S.G. 5K1.1. This court remanded to the district court for a ruling on the Rule 35(c) motion. The district court held a hearing on appellant's Rule 35(c) motion on January 28, 1993. The court ruled that the plea agreement did not provide that the government would move for a reduction pursuant to U.S.S.G. 5K1.1. Appellant protested that it was his understanding when he entered the plea agreement that - 7 - 7 "the Government would advise [the court] as to what he cooperated . . . so that [the court] could make the downward departure under 5K." The district court, citing the "zipper clause" in the plea agreement, providing that no additional promises would be made unless in writing and signed by both parties, ruled that the government was only obliged to advise the court of appellant's cooperation, but not to move for a 5K1.1 reduction. The court found that the government had met its obligation: They complied with that part of their agreement, and I remember they told the court what has happened with the weapons. So they did comply by informing the court. Therefore, the district court denied appellant's Rule 35(c) motion. Appellant filed this appeal. Discussion __________ Breach of Plea Agreement ________________________ Regardless whether we apply a clearly erroneous or de novo standard of review to the district court's determination that the plea agreement was not violated, compare United States _______ ______________ v. Tilley, 964 F.2d 66, 71 (1st Cir. 1992) (applying clearly ______ erroneous standard), with Kingsley v. United States, 968 F.2d ____ ________ ______________ 109, 114 (1st Cir. 1992) (applying de novo standard), we uphold the district court's finding of no breach. The district court found that the plea agreement did not include a promise by the government to move for a reduction of sentence pursuant to 5K1.1. That finding is fully supported by the record. The - 8 - 8 plea agreement makes no mention of 5K1.1. Nor does appellant contend that any other written or oral agreement was entered. Appellant merely contends that he inferred from the government's promise to inform the court of his cooperation that it would also move for a 5K1.1 departure. The plea agreement specified, however, that the government had not made any additional promises and that "none will be entered unless in writing and signed by all parties." At the guilty plea hearing, appellant specifically acknowledged that "everything that was promised [him] is included, is inserted in this document which means that anything else which is not here does not exist or is not binding upon the government or upon [him]." Although appellant's reasonable understanding of the government's obligations under the plea agreement should be enforced, in this case a promise to move for a departure under 5K1.1 could not reasonably be implied from the plea agreement's promise to inform the court of the extent of appellant's cooperation. See, e.g., United States v. Massey, No. 92-3409, ___ ____ ______________ ______ 1993 U.S. App. LEXIS 16409 (10th Cir. July 1, 1993) (rejecting appellant's argument that plea agreement, providing only that the government would inform the court of the extent of defendant's cooperation, obligated the government to move for a 5K1.1 departure). As we said in United States v. Atwood, 963 F.2d 476, _____________ ______ 479 (1st Cir. 1992), "[i]t is nose-on-the-face plain that the - 9 - 9 [plea agreement] did not obligate the government to move for a downward departure based on appellant's cooperation." Appellant does not contend that the government refused to inform the court of the "extent and nature" of his cooperation. Rather, appellant's complaint is that the government refused to file a 5K1.1 motion. As the government never promised to make a 5K1.l motion, the government did not violate the plea agreement by failing to request a downward departure. Section 5K1.1 Departure _______________________ Appellant argues that the district court misinterpreted U.S.S.G 5K1.1 as requiring a government motion as a prerequisite to a downward departure based upon appellant's substantial assistance. We disagree. Section 5K1.1 provides, in relevant part, as follows: Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines. U.S.S.G 5K1.1. As this court has recently noted, "a government motion is a sine qua non to a departure for a defendant's ____ ___ ___ substantial assistance, see Wade v. United States, __U.S. __, __, ___ ____ _____________ 112 S. Ct. 1840, 1843, 118 L.Ed. 2d 525 (1992). . . ." United ______ States v. Mariano, 983 F.2d 1150, 1155 (1st Cir. 1993); see also, ______ _______ ___ ____ United States v. Atwood, 963 F.2d at 479. In Wade v. United _____________ ______ ____ ______ States, 112 S. Ct. 1840, the Supreme Court held that the ______ - 10 - 10 government's decision not to move for a downward departure pursuant to 5K1.1 was subject to judicial review and reversal if the refusal is found to be based upon an unconstitutional motive. The Court held that an arbitrary refusal of the government to file a 5K1.1 motion, in that it "was not related to any legitimate government end," would entitle appellant to relief. Id. at 1844. __ At his sentencing hearing, appellant argued that the government's failure to move for a 5K1.1 departure was arbitrary and capricious. As in Wade, however, appellant's only support ____ for his position was the extent of cooperation provided. The Court in Wade held that "[t]his of course, was not enough, for ____ although a showing of assistance is a necessary condition for relief, it is not a sufficient one." Id. Similarly, in this __ case, even assuming that appellant's assistance was "substantial," he is not entitled to relief. The government explained at the sentencing hearing that the reason it did not move for a downward departure was that appellant had not fulfilled his promise to deliver the missing guns or provide the names of the persons to whom he sold them. The government's failure to move for a departure for this reason is not arbitrary or capricious. The district court did not err in determining that it had no authority to grant a downward departure pursuant to U.S.S.G. 5K1.1 absent a motion from the government. Appellant's conviction and sentence are affirmed. ________ - 11 - 11