**UNITED STATES, Appellee,**

v.

**Craig J. CLARK, Defendant, Appellant.**

**No. 94–2071.**

United States Court of Appeals, First Circuit.

Heard March 1, 1995.
Decided May 22, 1995.

Kevin E. Buchholz with whom McDonough & Lindh, P.A., Manchester, NH, was on brief, for appellant.

Peter E. Papps, First Asst. U.S. Atty., with whom Paul M. Gagnon, U.S. Atty., Concord, NH, was on brief, for appellee.

Before STAHL, Circuit Judge, and CAMPBELL and JOHN R. GIBSON,* Senior Circuit Judges.

* Of the Eighth Circuit, sitting by designation.

STAHL, Circuit Judge.

Defendant-appellant Craig J. Clark appeals from his sentence, claiming that the government breached its plea agreement with him. Agreeing, we remand for resentencing.

## I.

## BACKGROUND

On June 1, 1994, Clark waived his right to indictment and pleaded guilty to a two-count information stemming from a kidnapping. Count I charged him with conspiracy to interfere with commerce by threats or violence, in violation of 18 U.S.C. § 1951, and Count II charged him with interference with commerce by threats or violence, also in violation of 18 U.S.C. § 1951. The written plea agreement contained the following stipulation:

> The Government agrees that it will not oppose a three (3) level reduction in the defendant's Adjusted Offense Level under the Sentencing Guidelines, based upon the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense.

After accepting Clark's guilty plea, the district court ordered a presentence investigation and report to be issued by the probation office. The Presentence Investigation Report indicated that during the presentence interviews of Clark's co-defendants, the probation officer learned that, prior to the arraignment and the change-of-plea proceedings, Clark had attempted to induce two of his co-defendants to lie to the court and state that the kidnapping victim had been involved in the extortion scheme. Because of this activity, the probation officer concluded that Clark had attempted to obstruct justice and recommended a two-level increase in his Adjusted Offense Level pursuant to U.S.S.G. § 3C1.1. Defense counsel objected to the probation officer's conclusions.

Prior to Clark's sentencing hearing, the government submitted to the court a sentencing memorandum outlining proposed guideline adjustments to be taken in light of Clark's alleged obstruction of justice. The

memorandum contained a two-page discussion about whether Clark was entitled to an acceptance-of-responsibility adjustment. Clark objected to the government's sentencing memorandum, contending that it breached the plea agreement. Defense counsel filed a motion to withdraw Clark's plea, explaining to the court that when the government breaches a plea agreement, the court may either compel specific performance on the plea agreement or allow the defendant to withdraw his plea. The court denied Clark's motion to withdraw his plea, stating first that the government had not breached the plea agreement, second that it would not be influenced by what the government recommended, and third that it would not consider the acceptance-of-responsibility portion of the government's sentencing memorandum. After denying the three-level downward adjustment for acceptance of responsibility, the court imposed a two-level upward adjustment for obstruction of justice and sentenced Clark to 188 months.

## II.

### DISCUSSION

*A. Standard of Review*

Clark and the government disagree as to the appropriate standard of review, Clark claiming that our review is *de novo* and the government, despite citing cases to the contrary in other parts of its brief, flatly stating that it is for clear error. As we have previously acknowledged, *see United States v. Gonzalez–Perdomo*, 980 F.2d 13, 16 n. 2 (1st Cir.1992), in some cases we have stated that our review is *de novo*, while in other cases we have stated that our review is for clear error. *Compare id.* at 16 (*de novo*); *Kingsley v. United States*, 968 F.2d 109, 114 (1st Cir. 1992) (*de novo*); *United States v. Atwood*, 963 F.2d 476, 478 (1st Cir.1992) (*de novo*); *United States v. Canada*, 960 F.2d 263, 269 (1st Cir.1992) (*de novo*) *with United States v. Tilley*, 964 F.2d 66, 71 (1st Cir.1992) (clear error); *United States v. Kurkculer*, 918 F.2d 295, 298 n. 5 (1st Cir.1990) (clear error); *Panzardi–Alvarez v. United States*, 879 F.2d 975, 987 (1st Cir.1989) (clear error), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107

L.Ed.2d 1045 (1990); *United States v. Giorgi*, 840 F.2d 1022, 1028 (1st Cir.1988) (clear error); *United States v. Gonzalez–Sanchez*, 825 F.2d 572, 578 (1st Cir.) (clear error), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Khoury*, 755 F.2d 1071, 1073 (1st Cir.1985) (clear error). We take this opportunity to clarify the appropriate standard of review and to explain why the two different standards stated in many of these cases are not in conflict.

Cases involving plea agreements allegedly breached by the government present two separate issues for our consideration, one factual, the other legal. First, there are the factual questions of what the terms of the agreement are and what the government's conduct was. *See, e.g., Giorgi*, 840 F.2d at 1028–29 (looking to reasonable expectations of parties to determine whether ambiguous plea agreement foreclosing prosecution for "any criminal acts related to thefts or hijackings of vans" barred later prosecution for arson or mail fraud) (emphasis eliminated); *accord Bemis v. United States*, 30 F.3d 220, 223 (1st Cir.1994) (remanding to district court to make factual finding whether government promised as part of plea agreement to secure defendant's entry into witness protection program). If disputed, these factual questions are to be resolved by the district court, and we will review the district court's determinations only for clear error. *See Giorgi*, 840 F.2d at 1028. Second, there is the legal question of whether the government's conduct breached the plea agreement. *See, e.g., Atwood*, 963 F.2d at 479 (government did not breach plea agreement requiring it to offer its views on defendant's cooperation at defendant's request when defendant did not so request). Because whether the government's conduct constituted a breach is a question of law, our review is plenary. *Id.* at 478.

Here, we are not faced with disputed facts. Thus, we must determine only the legal question of whether the government's undisputed conduct breached the plea agreement, which we review *de novo*.

## B. Legal Principles

■ In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court declared that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499. Because plea bargaining requires defendants to waive fundamental constitutional rights, we hold prosecutors engaging in plea bargaining to "the most meticulous standards of both promise and performance." *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973). As we stated in *Kurkculer*, "[t]he government must keep its promises or the defendant must be released from the bargain." 918 F.2d at 297.

■ We are guided in our interpretation of plea agreements by general principles of contract law. *See Atwood*, 963 F.2d at 479; *Giorgi*, 840 F.2d at 1025. As we explained in *Gonzalez–Sanchez*,

> When a defendant has entered into a plea agreement with the government, the court must ensure that he receives what is reasonably due him under the agreement. Contractual principles apply insofar as they are relevant in determining what the government "owes" the defendant. If the defendant lives up to his end of the bargain, the government is bound to its promises.

825 F.2d at 578 (footnotes omitted). *See also United States v. Baldacchino*, 762 F.2d 170, 179 (1st Cir.1985) ("Though a matter of criminal jurisprudence, plea bargains are subject to contract law principles insofar as their application will insure the defendant what is reasonably due him.").

## C. Did the Government Breach?

■ We think that the government breached its plea agreement in this case. As part of the consideration for defendant's guilty plea, the government agreed not to oppose a three-level reduction for acceptance of responsibility. Nonetheless, the government effectively opposed such a reduction with its sentencing memorandum, in which it stated:

> While the government is cognizant of th[e] fact that it agreed not to oppose a three level downward departure for acceptance [of responsibility] in the plea agreement, it must be stated that the Government was unaware of this information indicative of obstruction at the time of the plea negotiations. Although the government can not now close its eyes to the defendant's blatant attempts to obstruct justice, it would suggest to the court that its prior representations in the plea agreement restrict a more vigorous argument on the issue of the loss of an acceptance of responsibility award. The government relies on the court's sound discretion in resolving this issue, although there appears to be nothing "extraordinary" about the present case that would bring it within the narrowly drawn exception of U.S.S.G. § [3E1.1 application note 4].[1]

We hold that the government opposed an acceptance-of-responsibility adjustment with this sentencing memorandum; formal opposition was not necessary. *Cf. United States v. Garcia*, 698 F.2d 31, 37 (1st Cir.1983) ("'A plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language.'") (quoting *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir.1978)); *Canada*, 960 F.2d at 269 ("While it can be argued that the government stopped short of explicitly repudiating the agreement, *Santobello* prohibits not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them.") (quotation omitted). Despite stating that it could not present "a more vigorous argument" because of the plea agreement, the government made clear its position that no reduction was appropriate. *Cf. United States v. Voccola*, 600 F.Supp.

---

1. U.S.S.G. § 3E1.1 deals with adjustments for acceptance of responsibility. Application note 4 provides: "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."

1534, 1539 (D.R.I.1985) (Selya, J.) (finding no breach when prosecutor "did not attempt to do by indirection what he was barred from doing directly"). By stating that it was unaware of the alleged obstruction at the time it entered into the plea agreement, the government indicated that it would not have made this plea agreement had it known then what it knows now.[2] The government's "references to the agreement were grudging and apologetic," *Canada,* 960 F.2d at 269, despite our rule that "it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself," *id.* at 270. *Cf. United States v. Tursi,* 576 F.2d 396, 399 (1st Cir. 1978) (finding no breach where prosecutor "issued no equivocal comments"). Not only did the government suggest that it thought no acceptance-of-responsibility adjustment was appropriate, it also argued that there was nothing "extraordinary" about the case to bring it within the U.S.S.G. § 3E1.1 application note 4 exception allowing an acceptance-of-responsibility adjustment even when there has been an obstruction of justice.

In arguing that its sentencing memorandum did not breach the plea agreement, the government relies on another portion of the plea agreement, which reads:

> The defendant also understands that the Government and the United States Probation Office will (a) advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention; (b) respond to questions from the Court; (c) correct any inaccuracies in the pre-sentence report; (d) respond to any statements made by the defendant or his counsel to a probation officer or to the Court; and (e) may address the Court with respect to an appropriate sentence to be imposed in this case.

Based on this language, the government argues that its sentencing memorandum "did not contain a request for relief, but merely stated facts." We do not agree. While it is true that the government had not only the ability but the duty to draw facts to the court's attention, *see Canada,* 960 F.2d at 270 n. 7 ("It is necessary at all times that the government 'level' with the court as to the correct facts and calculations relevant to guideline sentencing."); *Voccola,* 600 F.Supp. at 1538 ("Under virtually all circumstances, the government has the duty to disclose to the court pertinent factual information in its possession."), we think the government did more in this case. Rather than merely drawing facts and law to the court's attention, or answering factual or legal questions posed by the court, the government instead indicated that it opposed an adjustment for acceptance of responsibility and effectively argued against it by stating that this was not an "extraordinary" case.

Unquestionably, the government's promise not to oppose an acceptance-of-responsibility adjustment was a significant factor in defendant's decision to accept the agreement. Thus, by opposing an acceptance-of-responsibility adjustment, the government made a significant and deliberate breach of the plea agreement with defendant. Therefore, the district court's holding that the government did not breach the plea agreement must be reversed.

### D. Was the Breach Harmless?

■■■ "[A] prosecutorial failure to fulfill a promise or to make a proper promise is not rendered harmless because of judicial refusal to follow the recommendation or judicial awareness of the impropriety." *Correale,* 479 F.2d at 949. Thus, even if, as in this case, the sentencing judge indicates that the prosecutor's breach had no effect on the defendant's sentence, the defendant is still entitled to a remedy.[3] *See Santobello,* 404 U.S.

---

2. At no time has the government argued that it was released from the plea agreement because Clark himself breached the plea agreement by obstructing justice.

3. Of course, minor deviations from the plea agreement will not mandate resentencing. This is because minor deviations do not affect the consideration due the defendant under the plea agreement. *Cf. Santobello,* 404 U.S. at 262, 92 S.Ct. at 499 ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be *part of the inducement or consideration,* such promise must be fulfilled") (emphasis added); *Panzardi–Alvarez,* 879 F.2d at 986 ("The government may not breach any term of a plea agreement *which induced* the defendant to plead guilty.") (emphasis

at 262, 92 S.Ct. at 499 (remanding for remedy even though sentencing judge "stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that"). As we explained in *Correale,*

> The reason [the government's breach cannot be harmless] is obvious; it is the defendant's rights which are being violated when the plea agreement is broken or meaningless. It is his waiver which must be voluntary and knowing. He offers that waiver not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court. If they are not adequate, the waiver is ineffective.

479 F.2d at 949.

■ In this case, despite finding no breach by the government, the district court stated that it would not consider the government's sentencing memorandum. That the district court did not even consider the breaching material (as opposed to just not being influenced by it) will not defeat the need for Clark to be resentenced. We confronted a similar situation in *Kurkculer,* in which the prosecutor initially suggested sentencing in accordance with the presentence report but then, after learning that such recommendation breached the plea agreement, withdrew that recommendation and substituted the one promised in the plea agreement. We held that the defendant needed to be resentenced, explaining,

> The Court in *Santobello* nowhere suggested that a mere withdrawal of the offending recommendation with substitution of the agreed recommendation would have been a sufficient remedy. While no such attempt was made in *Santobello,* its futility is suggested by the Court's comment that "at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial.... That the breach of agreement was inadvertent does not lessen its impact."

*Kurkculer,* 918 F.2d at 302 (quoting *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499) (alteration in *Kurkculer*). Thus, even if the govern-

ment had withdrawn its sentencing memorandum, Clark would still have been entitled to a remedy. That the district court did not consider the government's breaching sentencing memorandum is irrelevant to the question of whether Clark is entitled to a remedy.

### E. Remedy

■ In *Santobello,* the Supreme Court indicated that there are two ways to remedy the government's breach of a plea agreement: giving the defendant "the opportunity to withdraw his plea of guilty," or "specific performance of the agreement." 404 U.S. at 263, 92 S.Ct. at 499. In unusual circumstances, we have also crafted other remedies. *See Correale,* 479 F.2d at 950 (using equitable powers to remand with instructions to impose a specific sentence because such sentence was the "only just remedy and the only one which could now approximate specific enforcement of the agreement"). If specific performance is a sufficient remedy, then the defendant must be resentenced by a different judge. *Kurkculer,* 918 F.2d at 298.

■ The choice of remedy is normally left to the discretion of the sentencing court. *See Santobello,* 404 U.S. at 263, 92 S.Ct. at 499. This court, however, has "repeatedly expressed a *preference* for specific performance of the agreement by resentencing before a different judge rather than vacating pleas," *Kurkculer,* 918 F.2d at 300 (emphasis in original), for "[o]nce that is done, a defendant 'will obtain all he says he was promised,'" *id.* (quoting *McAleney v. United States,* 539 F.2d 282, 286 (1st Cir.1976)).

■ Although Clark sought to withdraw his plea prior to sentencing, he does not do so on appeal. Rather, he requests only specific performance. In similar cases, we have held that "specific performance by resentencing is all that is required," *id.* at 302, for

> [s]pecific performance ... is a lesser burden on the government and defendant. Further, permitting a judge to vacate a

added). *See Correale,* 479 F.2d at 947 ("we do not go so far as to say that minor and harmless slips by prosecutors will void a plea bargain"). In this case, the government does not contest

that its promise not to oppose an acceptance-of-responsibility adjustment was part of the consideration for Clark's guilty plea.

plea over defendant's objection on breach by the prosecution allows the government to back out of its agreement at will and obtain a new trial. Given nothing more than the prosecutor's breach, the circumstances do not "require" a new trial.

*Id. See also Canada*, 960 F.2d at 271 ("Here Canada seeks and we grant [specific performance]. We do not find that the circumstances of this case demand the greater remedy of a withdrawn plea absent defendant's request for such relief."). Thus, we remand this case with orders that Clark be resentenced by a different judge.

## III.

### CONCLUSION

Because we find that the government breached its plea agreement with Clark, we remand for resentencing before another judge. In light of our holding that Clark must be resentenced, we need not reach Clark's other assignments of error.[4]

***Remanded for further proceedings in accordance with this opinion.***

---

**4.** Clark argues that the district court erred in not construing certain statements in the light most favorable to him, in finding that he obstructed justice, and in applying the preponderance-of-the-evidence standard instead of the reasonable-doubt standard to determine whether Clark obstructed justice.